UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA                          :

      -against-                                :          25 CR 29 (JGK)

GINA GUY,
ROSANNA LISA STANLEY,                             :

               Defendants             :
------------------------------------------------------------------X

# DEFENDANTS GUY'S AND STANLEY'S MOTION TO SUPPRESS, MOTION FOR *Franks* HEARING, AND MOTION FOR *Wade* HEARING

Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Rosanna Stanley*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com


William Castro
*Attorney for Defendant Gina Guy*
8724 S.W. 72nd Street, #205
Miami, Florida 33173
Telephone: 305-898-3716
Fax: 305-598-2023
Email: wmcastronyatty@gmail.com

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

FACTS ......................................................................................................................7

    I. Search Warrant for Ms. Stanley's Person, Residence and All Devices Therein. ...................7

    II. GPS Warrants. ..............................................................................................12

    III. The Charges. ...............................................................................................16

    IV. Pretrial Identifications. ...................................................................................17

DISCUSSION................................................................................................................18

    I. Search Warrant for Stanley's Home and Person. ....................................................18

        A. Lack of Probable Cause. ............................................................................18

        B. Lack of Particularity & Unconstitutionally Overbroad....................................22

    II. GPS Warrants Not Supported by Probable Cause That Evidence Will Be Found...............28

    III. Motion for *Franks* Hearing..............................................................................33

    IV. Motion for *Wade* Hearing................................................................................38

CONCLUSION................................................................................................................39

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. White,* 496 U.S. 325, 328-29 [1990]..................................................................19, 20

*Carpenter v. United States,* 585 U.S. 296, 316 (2018) ...............................................................29

*Ferrari v. Florida*, 260 So.3d 295, 305 (Fla. 4th DCA 2018)...................................................29

*Franks v. Delaware,* 438 U.S. 154 (1978). .....................................................................33, 38, 40

*Ganek v. Leibowitz*, 874 F.3d 73, 87 [2d Cir. 2017]...................................................................21

*Illinois v. Gates*, 462 U.S. 213, 238 [1983].........................................................................29, 30

*In re Search of a Residence in Oakland*, 354 F. Supp. 3d 1010, 1014 (N.D. Cal. 2019) .............26

*In re Search of Single-Family Home*, 549 F. Supp.3d 810, 819 (N.D. Ill. 2021)............. 24, 25, 26

*Maryland v. Pringle,* 540 U.S. 366, 371 (2003) .......................................................................18

*Mysholowsky v. People,* 535 F.2d 194, 197 [2d Cir. 1976].........................................................38

*Riley v. California*, 573 U.S. 373, 394-397 (2014)...................................................................24

*United States v. Abboud,* 438 F.3d 554, 576 [6th Cir. 2006] ......................................................27

*United States v. Awadallah,* 349 F.3d 42, 64 (2d Cir. 2003).......................................................33

*United States v. Bautista,* 23 F.3d 726, 729 [2d Cir. 1994] ........................................................38

*United States v. Bertini,* 2023 U.S. Dist. LEXIS 212013, *10 (S.D.N.Y. Nov. 29, 2023).....29, 30

*United States v. Canfield,* 212 F.3d 713, 717-18 (2d Cir. 2000).................................................33

*United States v. Carton,* 2018 U.S. Dist. LEXIS 117242, *18 (S.D.N.Y. 2018)........................24

*United States v. Chandler*, 164 F. Supp. 3d 368 (E.D.N.Y. 2016)............................................38

*United States v. Christopher,* 2020 U.S. Dist. LEXIS 167627, *25; 2020 WL 5518216 (S.D.N.Y. Sept. 13, 2020). ....................................................................................................................38

*United States v. Cohan*, 628 F. Supp. 2d 355, 365 [E.D.N.Y. 2009] .........................................27

*United States v. Elmore,* 482 F.3d 172, 179 (2d Cir. 2007)...................................................19, 20

*United States v. Falcon*, 2025 U.S. Dist. LEXIS 3825, *24; (E.D.N.Y. Jan. 8, 2025)...........29, 30

*United States v. Ford*, 184 F.3d 566, 576 [6th Cir. 1999].....................................................27

*United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)..................................................22, 23

*United States v. George*, 975 F.2d 72, 76 [2d Cir. 1992]......................................................22

*United States v. Griffith,* 867 F.3d 1265, 1276 (D.C. Cir. Court of Appeals 2017). ..............24, 25

*United States v. Grubbs*, 547 U.S. 90, 95 (2006) ........................................................29

*United States v. Hernandez*, 2010 U.S. Dist. LEXIS 719, *29; 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010)..............................................................................................................27

*United States v. Ippolito,* 774 F.2d 1482,1487 n.1 (9th Cir. 1985)................................................33

*United States v. Jacobson*, 4 F. Supp. 3d 515, 526 [E.D.N.Y. 2014].........................................27

*United States v. Kow*, 58 F.3d 423, 427 [9th Cir. 1995] ................................................27

*United States v. Lauria,* 70 F.4th 106, 128 [2d Cir. 2023]........................................................29

*United States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980)..........................................................33

*United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). ................................................34

*United States v. Raymonda*, 780 F.3d 105, 113 [2d Cir. 2015]..................................................18

*United States v. Thai*, 29 F.3d 785, 811 [2d Cir. 1994] ................................................38

*United States v. Wade*, 388 U.S. 218 (1967). ................................................................38, 39, 40

*United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) .........................................18, 27

*United States v. Wilson,* 493 F. Supp. 2d 364, 382 [E.D.N.Y. 2006].........................................38

*Warden v. Hayden*, 387 U.S. 294, 307 (1967)..............................................................31

*Washington v. Detective,* 29 F.4th 93, 110 (2d Cir. 2022).........................................................21

*Wiggins v. Greiner*, 132 Fed. Appx. 861, 865 (2d Cir. 2005)....................................................38

**Statutes**

18 U.S.C. § 666........................................................................................................30

**Treatises**

2 W. La Fave, Search and Seizure § 4.6(a) [5th ed. 2012]........................................23

**Constitutional Provisions**

Article I, Section 12 of the Florida State Constitution...........................................29, 33

Article I, Section 12 of the New York State Constitution.......................................29, 33

Fourth Amendment ...........................................................................................passim

**PRELIMINARY STATEMENT**

Defendant Rosanna Stanley ("Stanley") moves to suppress evidence from the warrant to search her person, her residence, and all devices found in her residence. Both the Federal Constitution and Florida State Constitution require that warrants be supported by probable cause.

Here, the supporting affidavit alleges that an individual referred to as "Victim-2" was fraudulently induced to send money to an individual referred to as Target Subject 1. Target Subject 1 allegedly introduced Victim-2 to a woman called "Mimi," telling Victim-2 that Mimi was her sister. Although Victim-2 did not send money to her, Mimi allegedly participated in the defrauding of Victim-2 by misrepresenting that she worked at a dress-making shop that she needed money to purchase. When shown Ms. Stanley's DMV photograph, Victim-2 identified Ms. Stanley as Mimi.

Crucially, however, the affidavit lacks any information about Victim-2's ability to identify Ms. Stanley. There is no information about the circumstances of the purported introduction, including but not limited to whether it was in person, how long it lasted, how long ago it occurred, and whether "Victim-2" had a good view of Mimi at the time. There is also no indication in the affidavit that Victim-2 ever met with Mimi after the introduction, or whether he ever directly communicated with Mimi after the introduction.

The affidavit also relies on the alleged defrauding of another individual referred to as "Victim-3." However, the affidavit indicates that law enforcement never actually interviewed "Victim-3." Instead, law enforcement depended on the word of Victim-3's relatives that Ms. Stanley had allegedly made misrepresentations to Victim-3.

However, Victim-3's relatives have a glaringly obvious motive to lie. According to the affidavit, Victim-3, who was in a personal relationship with Ms. Stanley, was contemplating

1

changing his will to leave $ 9 million of assets to Ms. Stanley, instead of to his relatives. The desire to protect their inheritance is an incredibly strong motive to lie.

There is also no indication, from the affidavit, of how Victim-3's relatives would have known of any alleged misrepresentation made to Victim-3 in their absence.

There is, however, a concession in the affidavit that "Victim-3" knowingly gave Ms. Stanley gifts, including knowingly paying her expenses, as part of their relationship, suggesting that the funds from Victim-3 that the relatives claim were fraudulently obtained may have been simply more gifts to his significant other.

Accordingly, the warrant to search Ms. Stanley's person, her residence, and the devices therein is not supported by probable cause.

Alternatively, even if the warrant were supported by probable cause, it would fail the particularity requirement and be unconstitutionally overbroad. The warrant authorizes the seizure and search of ALL devices located on the premises (except for any physically on the person of someone else at the time), without regard to whom the devices belong to.

The home in question was a shared residence.

The affidavit first declares that there is probable cause that Ms. Stanley used one cell phone in furtherance of the alleged offenses, and that Ms. Stanley used an electronic device to send wire transfers. The law enforcement agent then clarifies that when he says electronic device, he includes cell phones in the definition of this term, meaning that Ms. Stanley could have used the same cell phone for both allegedly communicating with victims and to send wire transfers.

Inexplicably, however, with no additional allegations of fact concerning Ms. Stanley's use of electronics, the agent then avers that Ms. Stanley used "different" electronic devices in furtherance of the suspected crimes.

That Ms. Stanley allegedly used a cell phone in furtherance of the charged crimes does not provide probable cause to seize and search all electronic devices in a shared home, regardless of whom they belong to.

Law enforcement was required to particularly describe the things to be seized, which required them to describe the electronic devices to be seized as devices that belong to Ms. Stanley, rather than as all devices found on the premises.

Additional factors indicating that the premises warrant was overbroad include that there was no time limitation on the records to be seized, despite the affidavit having set forth when three alleged victims were defrauded (and despite Ms. Stanley having resided in the home for decades), as well as the expansive description of items to be seized. For example, the warrant authorized, without limitation, the seizure of all "addressed correspondence, diaries, statements, identification documents, address books," on the premises, among other things, despite the fact that it was *a shared residence.*

Defendant Guy and Defendant Stanley move to suppress evidence from the Warrants for their historical and prospective location information, toll records, pen register information, etc. The Federal Constitution, as well as the New York State and Florida State Constitutions, require that a warrant for a person's cell site location information ("CSLI") must be supported by probable cause that the data will contain evidence of a crime.

Here, however, there was no indication (aside from conclusory statements) in any of the three supporting affidavits that the CSLI would contain evidence of a crime. Rather, the affiant

alleged that the defendants had committed the charged offenses and that the defendants had used the phones in question, and then leapt to the conclusion that the CSLI would contain evidence of a crime.

However, the Court cannot infer that a person's *location information* will contain evidence of a crime from the mere allegations that the person committed a crime and had a cell phone. Whether location information will contain evidence of a crime depends on the facts of the case and the nature of the charged crimes.

Here, where the charged crimes did not depend on where the defendants were physically located at any time, as the crimes could have been committed from anywhere in the U.S., the affidavits in support of the three warrants were utterly devoid of any probable cause that the defendants' location information would contain evidence of a crime.

Nor can the Court credit the assertion that the defendants' location information would aid in their apprehension. Even if the agent had not falsely stated in the first two affidavits that arrest warrants were pending when they were not, the F.B.I. located the defendants from other sources of information, as set forth by the same F.B.I. agent in affidavits in support of warrants to search the defendants' residences.

Even assuming *arguendo* that some location information was necessary in order to effectuate the arrests of the defendants, this could not conceivably justify Warrants for *years'* worth of the defendants' location information. Yet the first "GPS Warrant" sought Ms. Guy's location data for the period of January 1, 2016 through 45 days from the date of the Warrant in 2024, and Ms. Stanley's location data for the period of November 1, 2022 through 45 days from the date of the Warrant in 2024.

4

The conclusory assertion that there was probable cause that the Warrants would result in the identification of co-conspirators is meritless. Not only is there no indication in any of the supporting affidavits that the defendants had any uncharged co-conspirators, but today, well over a year after the warrants were issued, none of the discovery produced by the Government suggests that there were any uncharged co-conspirators.

Thus, the defendants move to suppress evidence from the GPS Warrants.

In the alternative, the defendants move for a *Franks* hearing. The Third GPS Warrant deliberately omitted the fact that there had been two prior GPS Warrants, neither of which had yielded any evidence. Furthermore, the accompanying application from the U.S. Attorney's Office affirmatively misrepresented that there had been no prior applications for such a warrant.

The supporting affidavits for the GPS Warrants also deliberately omit that law enforcement located the defendants from other sources of information, as indicated in the affidavits in support of warrants to search the defendants' residences.

The affidavits in support of the first two GPS Warrants falsely state that arrest warrants were pending for the defendants, when the F.B.I. agent had not yet applied for the arrest warrants for the defendants.

The affidavit in support of the warrant to search Ms. Stanley's residence made the statement that she had used multiple electronic devices in furtherance of the crimes in reckless disregard of the truth, as the allegations of fact in the affidavit were consistent with Ms. Stanley using one electronic device.

The affidavit in support of the warrant to search Ms. Stanley's residence omits that it was a shared residence, which the agents knew or should have known from their investigation, having conducted physical surveillance of the residence on multiple occasions. This omitted information

goes to whether there was probable cause to indiscriminately seize devices, records, and other belongings from the premises regardless of whom they belong to. And the affidavit in support of the two warrants for Ms. Stanley's CSLI omit that "Victim-3", whom she allegedly defrauded, gave Ms. Stanley gifts as part of their relationship, including but not limited to paying Ms. Stanley's personal expenses. (This deliberate omission is all the more crucial given that law enforcement did not interview "Victim-3" and that the relatives who claimed "Victim-3" was defrauded had $ 9 million worth of reasons to lie).

Finally, Ms. Stanley moves for a *Wade* hearing. The witness in question was shown a single photograph from which he or she identified Ms. Stanley. This identification was blatantly unreliable and the product of an unnecessarily suggestive procedure where the witness explicitly stated to the FBI at the time that the witness had *never* met Ms. Stanley.

Wherefore, Ms. Stanley moves for a *Wade* hearing, and to preclude that witness's pretrial identification of Ms. Stanley, and any in court identification of Ms. Stanley by that witness.

The Government has also disclosed that other witnesses identified the defendants pretrial, while redacting from reports concerning these identifications any information concerning whether the other witnesses had met the defendants prior to identifying them and, if so, under what circumstances, as well as the witnesses' identities.

Accordingly, the defendants reserve the right to bring a supplemental *Wade* motion closer to trial (should there be a basis for doing so), after the Government's disclosure of the Government's witness list, whether the witnesses to be called made any of the pretrial identifications, and, if so, how they were allegedly familiar with the defendants prior to making the pretrial identifications.

6

**FACTS**

I. Search Warrant for Ms. Stanley's Person, Residence and All Devices Therein.

On June 24, 2024, the F.B.I. applied for a warrant to search the person of Defendant Stanley, as well as Ms. Stanley's residence. Ex. A – Aff. in Support of S.W. For Stanley's Residence and Person.

Magistrate Lisette M. Reid, of the Southern District of Florida, granted the warrant the same evening. Ex. B – S.W. for Stanley's Residence and Person.

The search warrant provided that, *inter alia,* all cell phones and other electronic devices were to be seized from the residence, with the exception of any devices found on the person of someone other than Ms. Stanley. Ex. B – S.W. at Attachment A-2 ("any computers, mobile devices, or electronic storage media found therein"), and Attachment B-2, p. 2 ("any electronic devices and storage media… but not any such devices or media found on the persons of any other individuals").

The search warrant also provided for the seizure of all "physical keys, encryption devices, or records of login credentials, passwords, private encryption keys, or similar information." Id.

The search warrant additionally provided for the seizure of multiple broad categories of other items, including but not limited to, "a. Evidence concerning occupancy or ownership of the Subject Premises, including utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys; … f. Evidence of the commission of the Subject Offenses, including… the ownership, use or control of any bank accounts, financial accounts, brokerage accounts, cryptocurrency system… used in furtherance of the Subject Offenses…. g. Evidence of the

7

commission of the underlying fraud scheme, including communications with victims or third parties, evidence of 'spoofing,'…  h. Evidence of state of mind relating to the Subject Offenses… including communications with victims or third parties…. and communications among and between co-conspirators and victims or third parties…. k. Evidence of the disposition of the proceeds of the Subject Offenses, including U.S. currency, foreign currency, cryptocurrency… stocks, bonds, jewelry, precious metals, electronics… artwork, furniture, clothing, other valuables, pre-paid debit cards, financial instruments, and financial accounts constituting or traceable to the proceeds of the Subject Offenses…" Ex. B, Attachment B-2, p. 1 – 2.

There was no timeframe for the items to be seized. Id.

Although the Affidavit In Support of the Search Warrant claimed that Ms. Stanley and another individual had "defrauded over a dozen individuals out of millions of dollars" since 2009,[1] the Affidavit discussed only three alleged fraud victims.

Of the three, there were no allegations that Ms. Stanley was in any way involved in defrauding "Victim-1." Ex. A – Aff. In Support, Paragraph 9.

"Victim-2" was allegedly defrauded into sending money to another individual, identified as "Target Subject-1", between October 2021 and 2022. Ex. A – Aff. In Support, ¶10(d) – (f).

The Affidavit alleges that Target Subject-1 "introduced Victim-2 to Target Subject-1's purported sister, 'Mimi,'" Ex. A – Aff. In Support ¶ 10(c).

According to the supporting affidavit, in February 2024, the FBI showed Victim-2 a photograph of Ms. Stanley, and "Victim-2 identified the individual depicted in the photograph…. as the woman Target Subject-1 identified as her sister 'Mimi,'" Id. ¶ 10(j).

---

[1] Ex. A, Aff. In Support, ¶ 8(a).

Allegedly, Victim-2 sent money to Target Subject-1 to help the woman introduced as "Mimi" "to purchase the dress-making business located in Astoria, Queens, where Target Subject-2 purportedly worked," Ex. A ¶ 10(d).

The affidavit states that the F.B.I. found no record of Ms. Stanley ever working at a dress making shop. Id. ¶ 10(g).

The Affidavit does *not* allege that Ms. Stanley either requested money from Victim-2 or that Ms. Stanley ever received money from Victim-2. Ex. A – Aff. in Support, ¶ 10.

The supporting affidavit alleges that Victim-2 and Target Subject-1 "maintained regular contact," Ex. A - Aff. in Support ¶ 10(b).

In contrast, it does not allege that Victim-2 maintained any regular contact with Ms. Stanley, nor that Victim-2 met Ms. Stanley more than once, nor even definitively state IF Victim-2 was actually introduced to Ms. Stanley *in person*, rather than remotely. Ex. A – Aff. In Support ¶ 10.

Finally, the supporting affidavit indicates that the F.B.I. interviewed "family members and representatives of Victim-3," rather than the individual referred to as Victim-3. Ex. A – Aff. in Support, ¶ 11.

The affidavit indicates that Ms. Stanley and "Victim-3" began a personal relationship in February 2023, during which "Victim-3" paid Ms. Stanley's "rent and living expenses," and gave her "money and things of value as gifts," Id. ¶ 11(a), (c), including an "engagement ring that cost over $300,000," Id. ¶ 11(k).

Victim-3's family advised the FBI that, although "Victim-3" had not changed his will yet, Victim-3 had announced his intention to revise his will to make Ms. Stanley a beneficiary,

and to leave her "a sum of approximately $7 million, as well as his Hamptons, New York home, which is valued at approximately $2 million." Id. ¶ 11(l).

According to Victim-3's family, in March 2023, Ms. Stanley asked him for "money for her catering business, 'Ella's Catering.'" Id. ¶ 11(e), leading "Victim-3" to wire $ 43,000 to Ella's Catering and to write a check for $ 184,700, which was deposited into an account for Ella's Catering. Id. ¶ 11(h).

According to his family, Victim-3 allegedly understood "when he made the wire transfer and issued the check… that 'Ella's Catering' was an operational catering business and the money…. would be used to pay for business expenses." Id. ¶ 11(h). His family also alleged that Ms. Stanley obtained an engagement ring from Victim-3 by misrepresenting that she would marry him. Id. ¶ 11(k).

The FBI confirmed that there was, in fact, a business incorporated in Florida in the name of Ella's Catering in March 2023, and that a bank account was opened in the corporation's name in March of 2023. Id. ¶ 11(f) and (g). However, the FBI alleged that there was no proof that Ella's Catering was an operational business, and that the funds sent to Ella's Catering were actually used to finance a boat in Ms. Stanley's name and a Mercedes Benz in Ms. Stanley's name. Id.¶ 11(i) – (j).

Evidence that the residence was Ms. Stanley's included property records in Ms. Stanley's name, DMV records, and physical surveillance of the residence on multiple occasions. Ex. A – Aff. In Support ¶¶ 13, 14 - 16.

In support of the application to seize all electronic devices in the home, the affiant alleged that Ms. Stanley "(i) used [her] cellphone to communicate with her victims… (ii) communicated by cellphone with financial institutions where [Ms. Stanley] held bank accounts; and (iii) made

numerous wire transfers diverting victim proceeds to various other bank accounts held in [Ms. Stanley's] name, which, based on my training and experience, as well as my review of bank records… I believe that [Ms. Stanley] made through a computer or other electronic device." Ex. A – Aff in Support ¶ 20.

In the following paragraph, the affiant clarified that cell phones fall within the definition of electronic device, and alleged that "Individuals who engage in the Subject Offenses frequently use electronic devices such as mobile phones, computers, and email in furtherance of their crimes." Id. ¶ 21(b). The affiant then went a step further.

Notably, while in Paragraph 20, the affiant could only swear that Ms. Stanley had used one cell phone and had used an electronic device, which might be the same cell phone,[2] to send wire transfers, Ex. A ¶ 20, three paragraphs later, the affiant was suddenly able to conclude that Ms. Stanley had not only used her phone to communicate with victims but had also "access[ed] her fraudulent bank accounts over the internet using different electronic devices." Ex. A – Aff. In Support ¶ 23.

Based on this, the FBI was not only seeking a warrant to seize all electronic devices in the home, but also for permission to use the fingerprint or face of *anyone* in the residence to attempt to unlock any device in the residence, Ex. A – Aff. In Support ¶ 30(h), and to seize *all* passwords and other log in information from the residence, Id., Attachment B-2, p. 2, Section I.B.1.

The supporting affidavit did not, however, inform the magistrate that others lived in the home with Ms. Stanley.

---

[2] Ex. A – Aff. in Support ¶ 21.

Senae Stanley, Ms. Stanley's suretor, was not only residing in the home at the time, but had been living there for 22 years. Ex. C – Declaration of Senae Stanley.

The items seized from the residence included, *inter alia,* "1 White Samsung Galaxy Express 3, one silver iphone S… one cracked White iPhone, one 32 GB Silver ipad…. one cracked silver ipad…. one black AT&T flip phone…. one black LG cellphone…. one black Samsung cellphone…. one white iPhone, one cracked black & red T-mobile cellphone…. one blue flip phone… one black 16gb Cruzer glide USB, one silver Mosdart USB… one pink HP laptop…. one black HP laptop…. one black Acer Aspire One laptop… one white iphone w/ pink case w/stars, one blue LG cellphone… one black Nokia flip phone," Ex. D – Receipt for Property.

The items seized from Ms. Stanley's residence also included, *inter alia,* the social security card, birth certificate, and expired passport of Ms. Stanley's adult daughter. Ex. E – Receipt for Property Returned to Defense Counsel.

II. GPS Warrants.

On April 25, 2024, the Government applied for warrants and orders to obtain, *inter alia*,

- for defendant Gina Guy's cell phone, historical location information from January 1, 2016 through the time of the order,

- for Ms. Stanley's cell phone, historical location information for the period of November 1, 2022 through the date of the order,

- prospective location information for both defendants' phones for a period of 45 days, and

- pen registers and trap and trace devices for both defendants' phones for 45 days. Ex. F - Application for 4/25/24 GPS Warrant.

In support of the application, the F.B.I. Special Agent swore that there was probable cause to believe that the requested information, including but not limited to the requested historical location information and requested prospective location information, "will lead to evidence of the crimes of… conspiracy to commit wire fraud… wire fraud… money laundering… monetary transactions involving property of specified unlawful activity…. aiding and abetting… as well as the location(s) of the," defendants and co-conspirators. Ex. F - Aff. in Support of 4/25/24 GPS Warrant, Paragraph 7.

There were, however, no allegations of fact indicating that the defendants had any co-conspirators, let alone that the items sought by the warrants would lead to the identities and locations of non-existent co-conspirators.

Over a year and a half later, no one has been charged as a co-conspirator and the Government has not produced any discovery suggesting that the defendants had any uncharged co-conspirators.

The F.B.I. Special Agent further alleged that there was a "pending arrest warrant" for the defendants, which law enforcement officers "expected to execute… in the near term." Ex. F - Aff. in Support of 4/25/24 GPS Warrant, Paragraph 24.

This was false. As the F.B.I. Special Agent knew or should have known, there were no pending arrest warrants for either defendant at that time. Indeed, no arrest warrants would be issued for either defendant for another two months.

The F.B.I. Special Agent also neglected to mention that one of the three alleged fraud "victims," who was in a relationship with Ms. Stanley, had freely given money and goods to Ms. Stanley.

13

While the F.B.I. Special Agent alleged in the supporting affidavit that the defendants had committed fraud and money laundering, he did not explain *how* either their historical location information or their prospective location information would lead to any evidence of a crime. Nevertheless, Magistrate Barbara Moses granted the application. Ex. G – April 2024 GPS Warrant.

On June 7, 2024, the Government applied for an extension of the GPS Warrants. Ex. H - 6/7/24 Application for Extn. of GPS Warrants. The application by A.U.S.A. Diarra Guthrie acknowledged the existence of the initial GPS Warrants at Paragraph 12 of the application. Id.

The F.B.I. Special Agent again averred that there was probable cause that the requested information, including but not limited to prospective location information, for the defendants, "will lead to evidence of the crimes of… conspiracy to commit wire fraud… wire fraud… money laundering…. monetary transactions involving property of specified unlawful activity… aiding and abetting… structuring transactions… as well as the location(s) of the Target Subjects… and the identification and location(s) of… co-conspirators," Ex. H - Aff. in Support Paragraph 7.

Once again, there were no allegations in the affidavit indicating probable cause to believe there were any co-conspirators, nor any allegations of *how* the defendants' prospective location information would lead to any evidence of the charged crimes.

Indeed, while the supporting affidavit referenced information gleaned from the prior GPS Warrants, it conspicuously did not mention any evidence of a crime obtained from the prior GPS Warrants.

As for identifying the locations of the defendants, the supporting affidavit indicated that law enforcement *had already* located the defendants. For example, the supporting affidavit indicated that Ms. Stanley's residence had already been located through Florida state property

14

records and physical surveillance, and that her address had been corroborated by the information from the original GPS Warrant. Ex. H - 6/7/24 Aff. In Support Paragraph 24.

Again, the supporting affidavit failed to mention that one of the alleged fraud "victims" freely gave money and property to Ms. Stanley.

Nevertheless, the application was granted by Magistrate Judge Stewart D. Aaron on June 7, 2024. Ex. I – 6/7/24 GPS Warrants.

On June 20, 2024, the Government applied for a Third Warrant and Order for Defendant Guy's prospective location information, historical location information, and pen register information. Ex. J - App. for Third GPS Warrant.

Paragraph 13 of the Application for the Third GPS Warrant specifies that "Except as may be set forth above, no prior request for the relief requested herein has been made." Id. at p. 6, Paragraph 13.

This was a false statement of fact, as nowhere in the application for the Third GPS Warrant does it mention the prior two GPS Warrants.

The application was signed by the same Assistant United States Attorney who had successfully applied for the previous GPS Warrants in April 2024 and on June 7, 2024, foreclosing any argument that the A.U.S.A. could have been unaware of the prior applications. Ex. F, p. 6, Ex. H, p. 6, Ex. J, p. 6.

In the Affidavit in Support of the Third GPS Warrant, the F.B.I. averred that there was probable cause to believe that the requested information, including Ms. Guy's prospective and historical location information, "will lead to evidence of the crimes of… conspiracy to commit wire fraud…. wire fraud… money laundering and conspiracy to commit money laundering…

15

aiding and abetting, as well as the location(s) of the Target Subjects… and the identification and location(s) of the Target Subjects' co-conspirators." Ex. J - Aff. in Support Paragraph 7.

The supporting affidavit goes on to discuss the alleged defrauding of "Victims 1 and 2," and to allege that Defendant Guy's phone records prove that the phone in question was in contact with both of these alleged victims.

Absent from the supporting affidavit, however, is that both of the Target Subjects had *already* been located by the F.B.I. by that point, as demonstrated by the F.B.I.'s affidavits in support of the other applications. See, e.g. Ex. H, Aff. in Support of Second GPS Warrants, ¶¶ 23 – 24 (stating the full home addresses of each of the defendants in support of the *prior* GPS Warrants, and detailing multiple sources for the defendants' home addresses, including but not limited to a grand jury subpoena to Defendant Guy's landlord, Paragraph 23(b), and Florida state property records, Paragraph 24[b]).

There is no explanation in the supporting affidavit of *how* Defendant Guy's historical or prospective location information would lead to evidence of the charged offenses.

Nor is there any mention in the Affidavit in Support of the Third GPS Warrant of the fact that this was the *third* application for Defendant Guy's historical and prospective location information, and that none of the location information seized pursuant to either of the previous two Warrants had uncovered any evidence of the charged offenses.

On June 20, 2024, Magistrate James L. Cott granted the Third GPS Warrant. Ex. K - Third GPS Warrant.

III. The Charges.

Defendants Guy and Stanley were arrested on or about June 25, 2024.

They were subsequently indicted on or about January 22, 2025. Indictment, Doc. # 30.

16

Defendant Stanley is charged with:

- Conspiracy to Commit Wire Fraud from in or about 2021 through in or about 2024 (Count 1)

- Wire Fraud from in or about 2011 through in or about 2024 (Count 3)

- Conspiracy to Commit Money Laundering from in or about 2021 through in or about 2024 (Count 4).

Defendant Guy is charged with Ms. Stanley in Counts 1 and 4, and is also charged with Wire Fraud from in or about 2020 through in or about 2024 (Count 2).

IV. Pretrial Identifications.

On Monday, January 5, 2026, in response to Defendants' requests for discovery and *Brady* material, the Government produced heavily redacted FBI reports regarding pretrial identification procedures.

According to these reports, during interviews, the FBI would show a witness a single photograph of Defendant Stanley and ask the witness if he or she could identify her, and would also show a witness photographs of Defendant Guy and ask the witness if he or she could identify her. (The reports also indicate that some witnesses were also asked to identify other individuals. Notwithstanding this, there has been no evidence produced to date that the defendants had any alleged co-conspirators.)

Nine of the witnesses who were shown Ms. Stanley's photograph purportedly recognized her. These consist of three witnesses not identified in any form in the redacted reports, one individual identified as "Person 1" in the redacted report, and five witnesses identified as alleged victims. Likewise, some of the witnesses who were shown Defendant Guy's photographs reportedly identified Ms. Guy.

17

One of the unidentified witnesses purportedly identified Ms. Stanley **without having ever met Ms. Stanley.** Ex. L – Redacted FBI Report dated June 28, 2024, bates # USAO_APO_0089651 (submitted for filing under seal given marked by Government as Attorney's Possession Only).

If there was any indication in the remaining reports of whether or not the other witnesses had actually met Ms. Stanley and, if so, how they were purportedly able to identify her, then the information was redacted by the Government prior to the reports being turned over in discovery.

Two of the alleged victims had to be prompted with Ms. Stanley's name. Ex. M – Redacted FBI Report of Interview with "Victim 4" (prompted with name Rose); Ex. N – Redacted FBI Report of Interview with "Victim 11" (prompted with name Delman) (both reports submitted for filing under seal given marked by Gov. as Attorney's Possession Only).

At this time, we do not know which, if any, of these witnesses the Government intends to call at trial, or whose in court or pretrial identifications the Government seeks to offer at trial.

## DISCUSSION

I. Search Warrant for Stanley's Home and Person.

A. Lack of Probable Cause.

Search warrants must be supported by probable cause that the items to be seized will be found in the place to be searched. *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (quoting *United States v. Raymonda*, 780 F.3d 105, 113 [2d Cir. 2015]).

Probable cause is analyzed under the totality of the circumstances. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (citations omitted). Nevertheless, an informant's "basis of knowledge" and veracity are still important factors to consider in determining whether information from a

18

source provided probable cause for a search. *United States v. Elmore,* 482 F.3d 172, 179 (2d Cir. 2007) (citing *Alabama v. White,* 496 U.S. 325, 328-29 [1990]). Also relevant is whether law enforcement was able to corroborate a source's information. Id.

Here, there was no probable cause for the warrant for Ms. Stanley's home and for all devices found therein. "Victim-1" is irrelevant as Ms. Stanley was not alleged to be involved in defrauding Victim-1.

Victim-2's basis of knowledge for identifying Ms. Stanley is unclear. While the affidavit says that Victim-2 maintained regular contact with "Target Subject-1," who allegedly defrauded him into sending her money, Ms. Stanley is not Target Subject-1. Rather, Target Subject-1 allegedly "introduced" Victim-2 to "Mimi."[3]

There are no allegations regarding the circumstances of the introduction, including whether it was in person or remotely. Assuming the introduction was in person, there are no allegations regarding how long (or short) a period of time Victim-2 had to observe Mimi, the distance Victim-2 was from Mimi, or how well Victim-2 was able to observe her.

There are no allegations that Victim-2 ever met Mimi again after the introduction (assuming Victim-2 even met with Mimi during the introduction), or that Victim-2 had any further contact with Mimi afterwards.

Instead, the affidavit merely indicates that an unknown period of time later, when Victim-2 was shown a photograph of Ms. Stanley and asked if he recognized her, he purportedly identified Ms. Stanley as Mimi. Ex. A – Aff. in Support of S.W. for Stanley's Residence and Person, ¶ 10(j).

---

[3] Ex. A – Aff. in Support of S.W. for Stanley's Residence and Person, ¶ 10(c).

19

As there is nothing to corroborate Victim-2's identification of Ms. Stanley as Mimi, and no indication that Victim-2's identification of Ms. Stanley as Mimi was even remotely reliable, the information regarding Victim-2 does not supply probable cause for the search warrant.

That leaves "Victim-3," who was in a romantic relationship with Ms. Stanley, culminating in him proposing marriage to Ms. Stanley.[4]

"Victim-3" knowingly and voluntarily gave Ms. Stanley gifts and money, including money to pay her living expenses. See Exhibit A – Aff. in Support of S.W. for Stanley's Residence and Person, ¶ 11(c) ("During the course of the purported relationship, on various occasions, [Ms. Stanley] told Victim-3… that STANLEY needed money for certain expenses. [STANLEY], for example, repeatedly requested that Victim-3 pay [STANLEY'S] rent and living expenses, and Victim-3 provided [STANLEY] with money and things of value as gifts…").

However, Victim-3 allegedly was defrauded into giving money to a catering business, money that was then allegedly used for Ms. Stanley's personal benefit rather than by the business. Ex. A – Aff. in Support of S.W. for Stanley's Residence and Person ¶ 10(e) – 10(j).

Crucially, the investigators never interviewed Victim-3. Instead, their information concerning the alleged defrauding of Victim-3 is based on interviews with Victim-3's family members. Id. ¶ 11.

While search warrants can be based on hearsay, one nevertheless has to assess what the family's basis of knowledge is and their veracity or lack thereof. *Elmore,* 482 F.3d at 179 (citing *White,* 496 U.S. at 328-29).

---

[4] Ex. A – Aff. in Support of S.W. for Stanley's Residence and Person, ¶ 10(k).

The totality of the circumstances includes whether the family had a known motive to lie. *Washington v. Detective,* 29 F.4th 93, 110 (2d Cir. 2022) (citing *Ganek v. Leibowitz,* 874 F.3d 73, 87 [2d Cir. 2017]).

Here, Victim-3's family had $ 9 million worth of reasons to lie. Specifically, if Ms. Stanley were not arrested in the case at bar, then Victim-3's family stood to lose $ 9 million of inheritance if "Victim-3" went forward with changing his will to leave $ 9 million worth of assets to Ms. Stanley instead of to his family upon his death.

Under these circumstances, we submit the family's veracity is irredeemably tarnished by their motive to lie.

The family's basis of knowledge about Ms. Stanley allegedly making fraudulent misrepresentations to Victim-3 is also questionable. There is no indication that Victim-3 ever spoke with his family about whether Ms. Stanley told him that the funds he sent to Ella's Catering would be used for a catering business, rather than constituting yet more funds that he was giving to Ms. Stanley to pay her own expenses.

Given that Victim-3 was prepared to disinherit these relatives (or at least to reduce his family's inheritance by $ 9 million worth of assets), it is far from clear that Victim-3 was on speaking terms with his family, let alone that he discussed with his family what, if anything, Ms. Stanley told him about how the funds to Ella's Catering would be used. (There is also no indication of the family's basis of knowledge for alleging that Ms. Stanley misrepresented "her intention to marry Victim-3." Ex. A – Aff. in Support of S.W. ¶ 11[k]. However, it is unclear if much, or indeed, any weight was given to the family's accusation that the defendant obtained an engagement ring through misrepresenting her intentions. We doubt that even the U.S. Attorney's

21

Office views every engagement that does not culminate in marriage as a potential criminal prosecution, else individuals could only accept a marriage proposal at their own risk.)

The investigators could easily have tested the family's allegations by speaking directly with "Victim-3" himself. They chose not to. Ex. A – Aff. in Support of S.W. ¶ 11.

In sum, the purported basis for probable cause for the search warrant rests on:

(a) a questionable identification of Ms. Stanley an unknown number of years after the witness was "introduced" to a woman called Mimi, and

(b) the allegations of family members facing the loss of $ 9 million of inheritance that Ms. Stanley had made a misrepresentation of fact to the testator, where the testator was known by the investigators to have knowingly paid Ms. Stanley's living expenses.

Wherefore, the search warrant was unsupported by probable cause, and Ms. Stanley moves to suppress the fruits of the search, due to the violation of her Constitutional rights under the Fourth Amendment of the U.S. Constitution and under the Florida State Constitution.


B. Lack of Particularity & Unconstitutionally Overbroad.

In addition to the requirement of probable cause, a warrant must particularly describe the place to be searched and the items to be seized. Per the Second Circuit, "'a failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary,'" *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting *United States v. George*, 975 F.2d 72, 76 [2d Cir. 1992]).

Similarly, a warrant is overbroad if the scope of the items to be seized is broader than what is supported by probable cause. "'[A]n otherwise unobjectionable description of the objects

22

to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.'" *Galpin*, 720 F.3d at 446 (quoting 2 W. La Fave, Search and Seizure § 4.6(a) [5th ed. 2012]).

Here, the search warrant fails the particularity requirement and is unconstitutionally overbroad. The items to be seized were not described with as much particularity as the circumstances allowed where the items to be seized included, *inter alia,* all devices in the home, all passwords and log in information, all clothing, all furniture, all artwork, all communications with third parties, and all addressed correspondence. Assuming *arguendo* that there was probable cause for the warrant, the description of items to be seized was unconstitutionally broader than what could be justified by probable cause.

The U.S. Supreme Court has recognized that cell phones must be treated differently from any other items under the Fourth Amendment, given that cell phones are unlike any one single analog object in existence.

> "First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone…An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns—perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD. Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature…and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building…
>
> "Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital

form many sensitive records previously found in the home; it also contains a broad array of private information never  found in a home in any form—unless the phone is."

*Riley v. California*, 573 U.S. 373, 394-397 (2014).

Accordingly, in the wake of *Riley*, courts began to recognize that if "a residence might contain a number of cell phones belonging to different people in the home, it cannot seize and search all of the cell phones it finds in the home based solely on a blanket warrant authorizing the seizure and search of any item that might contain evidence of the suspected crime… Rather, the government must demonstrate probable cause to believe that a particular cell phone or class of cell phones was used in the commission of the crime or would contain evidence of the crime," *In re Search of Single-Family Home*, 549 F. Supp.3d 810, 819 (N.D. Ill. 2021).

For example, the D.C. Circuit Court of Appeals held that a warrant was unconstitutionally overbroad where the defendant did not live alone and the warrant permitted the seizure of all devices in the home rather than limiting the scope to devices belonging to the defendant or to devices linked to the particular crime. *United States v. Griffith,* 867 F.3d 1265, 1276 (D.C. Cir. Court of Appeals 2017).

District courts in the Second Circuit have sought to distinguish individual cases from *Griffith*, 867 F.3d 1265, i.e. by highlighting that in *Griffith*, the warrant application did not establish that the defendant had even used a cell phone, let alone used it "extensively in furtherance of his crimes," *United States v. Carton,* 2018 U.S. Dist. LEXIS 117242, *18 (S.D.N.Y. 2018). (To be clear, this case could not be distinguished on that theory that Ms. Stanley used multiple electronic devices "extensively in furtherance" of the alleged crimes, as that is not supported by the affidavit. Rather, the supporting affidavit indicates in ¶ 20 that Ms. Stanley allegedly used her cell phone to communicate with victims and financial institutions; the

24

affiant then indicates his belief that Ms. Stanley used *a single* electronic device to send wire transfers, where "electronic device" could have meant the aforementioned cell phone. Ex. A – Aff. in Support, ¶¶ 20, 21(b) ["electronic devices such as mobile phones"]. Thereafter, with no further factual allegations specific to Ms. Stanley herself whatsoever, the affiant somehow jumps to the conclusion that Ms. Stanley not only used the aforementioned cell phone in furtherance of the alleged offenses, but also "different electronic devices". Id. ¶ 23.  Respectfully, that single unsupported, conclusory remark does not create probable cause that Ms. Stanley used multiple electronic devices extensively in furtherance of the alleged offenses. The factual allegations establish, at most, probable cause that Ms. Stanley used one (1) cell phone to communicate with alleged victims, with banks, and to engage in online banking. That does not rise to the level of probable cause to believe that every electronic device in a shared residence was used in furtherance of the alleged crimes.)

Courts' attempts to distinguish *Griffith* on this ground and to interpret its holding as narrowly as humanly possible, however, have missed the issue.

The issue is that under the particularity and probable cause requirements, even where there is probable cause to seize a *target individual's* cell phone and the *target's* other electronic devices, the Fourth Amendment does <u>NOT</u> permit a warrant for ALL phones and devices located on the premises, including any devices that belong to third parties. The Fourth Amendment requires that the warrant be limited to the *target's* devices. *In re Search of Single-Family Home*, at 820 – 821 (collecting cases where "warrants allowed the government to search only the defendants' own cell phone or other electronic devices). This is so even if law enforcement cannot give a more specific description of the devices to be seized than a general description as devices belonging to the suspect. <u>Id.</u> <u>See also</u> *In re Search of a Residence in Oakland*, 354 F.

25

Supp. 3d 1010, 1014 (N.D. Cal. 2019) (denying request for warrant to search and seize all electronic devices in the place to be searched as overbroad).

Yet, the search warrant here permitted the blanket seizure of all devices from the residence, regardless of whom they belong to, in spite of the fact that Ms. Stanley was **not** the only person who lived in the residence.[5] See Ex. B – S.W., Attachment A-2 ("The premises to be searched… includes… **any** computers, mobile devices, or electronic storage media found therein") (emphasis added), Ex. B – S.W., Attachment B-2, p. 2 ("the items to be seized from the Subject Premises also include **any** electronic devices and storage media that may contain any electronically stored information falling within the categories set forth in Section II.A…. but not any such devices or media found on the persons of any other individuals") (emphasis added). To facilitate seizing and searching **any** devices found on the premises, regardless of who they belonged to, the warrant authorized the seizure of all passwords "or similar information." Id.

Permitting the seizure of everyone's phones or electronic devices where the FBI knew, or should have known from the physical surveillance that they conducted of the residence[6], that Ms. Stanley did NOT live there alone,[7] both violated the particularity requirement of the Fourth Amendment and made the search warrant unconstitutionally overbroad. Nor does carving out an exception for devices physically on the person of third parties change the fact that the search warrant at issue permitted the seizure of third parties' devices. See In re Search of Single-Family Home, 549 F. Supp.3d at 820 ("if a cell phone bearing no identifying traits is lying alone on a coffee table in the living room, far from anyone, with no indication that the targeted individual

---

[5] Ex. C – Declaration from Senae Stanley.
[6] See Exhibit A – Aff. In Support ¶¶ 14 - 16 (law enforcement conducted physical surveillance of the residence on multiple occasions prior to applying for the search warrant).
[7] Ex. C - Declaration of Senae Stanley.

has used it, it may not be reasonable, without more, for the agents to believe that it belongs to that individual").

An additional factor weighing in favor of a finding that the warrant here was overbroad and violated the particularity requirement is the utter lack of time frame for the items to be seized. "A failure to indicate a time frame could render a warrant constitutionally overbroad because it could 'allow the seizure of records dating back arbitrarily far' and untethered to the scope of the affidavit which ostensibly provided probable cause." *United States v. Hernandez*, 2010 U.S. Dist. LEXIS 719, *29; 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) (citing *United States v. Cohan*, 628 F. Supp. 2d 355, 365 [E.D.N.Y. 2009]). <u>See also</u> *Wey*, 256 F. Supp.3d 355, 387 - 388 (citing *United States v. Jacobson*, 4 F. Supp. 3d 515, 526 [E.D.N.Y. 2014]; *United States v. Abboud*, 438 F.3d 554, 576 [6th Cir. 2006]; *United States v. Ford*, 184 F.3d 566, 576 [6th Cir. 1999]); *United States v. Kow*, 58 F.3d 423, 427 [9th Cir. 1995]).

Here, the supporting affidavit alleges that "Victim-2" was defrauded between approximately October 2021 and March 2022, and that "Victim-3" was defrauded in March of 2023.[8] (It also alleges that "Victim-1" was defrauded in October 2022, Aff. in Support ¶ 9, though this is irrelevant as there is no allegation that Ms. Stanley participated in any way in defrauding Victim-1.)

In contrast, while the warrant specified that individuals had allegedly been defrauded from October 2021 to March of 2023, Ms. Stanley had been residing in the home for *decades,* a fact that the FBI would have known from having checked the property records.[9]

---

[8] Ex. A – Aff. in Support of S.W., ¶¶ 10 – 11(h).
[9] Ex. A – Aff. In Support Paragraph 13.

Accordingly, there was a very significant risk that the warrant would result in the seizure of records stretching back "arbitrarily far" where Ms. Stanley had been residing in the home a substantial number of years prior to the time frame of the allegations of fraud and where the search warrant imposed no time limitation on the records to be seized.

Wherefore, the lack of a time limitation is another indicator that the warrant was unconstitutionally broad and violated the particularity requirement.

Finally, the extremely broad description of items to be seized further indicates the warrant's unconstitutional overbreadth and lack of particularity. To wit, the warrant permits the seizure not only of evidence of the alleged defrauding of victims, but also of, *inter alia,* the jewelry, artwork, furniture, and clothing in the home, Ex. B – S.W., Attachment B-2, Paragraph (I)(A)(k), and of all "telephone bills, mail envelopes, addressed correspondence, diaries,"[10] potentially stretching back *decades* in time.

It strains credulity to suggest that the clothing, correspondence, diaries and address books of third parties living in the shared residence or dating back decades could be in any way tied to the charged offenses, let alone that there was probable cause to seize same. Yet that is what the warrant at issue permitted.

Wherefore, as the search warrant violated the particularity requirement and was unconstitutionally overbroad, Ms. Stanley moves to suppress all evidence derived from same.

## II. GPS Warrants Not Supported by Probable Cause That Evidence Will Be Found.

Defendants Stanley and Guy move to suppress evidence from the first two "GPS Warrants", dated April 2024 and June 7, 2024, and Defendant Guy additionally moves to

---

[10] Id. Paragraph I(A)(a).

suppress evidence from the Third "GPS Warrant," dated June 20, 2024. Exhibits G, I, and K. (We note that these are the only "GPS Warrants" that were turned over in discovery. If the Government obtained additional location information and pen register information through additional warrants or other means, then we will have to supplement our motions to address same.)

The warrants for, *inter alia,* the defendants' historical and prospective cell site location information ("CSLI") and pen register information violated Ms. Stanley's rights under the Fourth Amendment of the U.S. Constitution and under the Florida State Constitution and violated Ms. Guy's rights under the Fourth Amendment of the U.S. Constitution and under the New York State Constitution.

To obtain a defendant's CSLI, the Fourth Amendment of the U.S. Constitution, Article I, Section 12 of the Florida State Constitution, and Article I, Section 12 of the New York State Constitution all require that law enforcement first obtain a warrant, supported by probable cause. *Carpenter v. United States,* 585 U.S. 296, 316 (2018); *Ferrari v. Florida*, 260 So.3d 295, 305 (Fla. 4th DCA 2018).

"'[P]robable cause to search a location for – or, in the case of [cell site data], to demand… is demonstrated where a totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found' thereby.'" *United States v. Bertini,* 2023 U.S. Dist. LEXIS 212013, *10 (S.D.N.Y. Nov. 29, 2023) (quoting *United States v. Lauria,* 70 F.4th 106, 128 [2d Cir. 2023], which in turn was quoting *Illinois v. Gates*, 462 U.S. 213, 238 [1983]); *United States v. Falcon*, 2025 U.S. Dist. LEXIS 3825, *24; (E.D.N.Y. Jan. 8, 2025) (same). See also *United States v. Grubbs*, 547 U.S. 90, 95 (2006) ("Probable cause exists when 'there is a fair

probability that contraband or evidence of a crime will be found in a particular place'") (quoting *Gates*, 462 U.S. at 238).

Accordingly, the court granted a motion to suppress cell cite data in *Bertini,* finding that the warrant was not supported by probable cause that the data would contain evidence of a crime given the affidavit failed to establish probable cause that the defendant had the cell phone with him when he allegedly committed the bank burglaries, or that he had used the cell phone in furtherance of the bank burglaries. 2023 U.S. Dist. LEXIS 212013, *28.

In contrast, in *Falcon,* the Eastern District found that a warrant for CSLI was supported by probable cause that the CSLI would contain evidence of a crime; more specifically, there was probable cause that the CSLI would prove that defendant had submitted fraudulent billing records for work and travel, as part of the crime of stealing government funds in violation of 18 U.S.C. § 666. *Falcon*, 2025 U.S. Dist. LEXIS 3825, *25 – 28.

Here, none of the three GPS Warrants were supported by probable cause that the defendants' CSLI would contain evidence of a crime. While the affidavits contained allegations that the defendants had defrauded certain individuals and that they had used the cell phones in question, crucially, there were no factual allegations indicating that the defendants' historical or prospective location information would contain evidence of fraud, money laundering, or any other crimes.

That is, there was nothing in the supporting affidavits for any of the three GPS Warrants indicating that proof of the defendants' whereabouts would contain evidence of the alleged offenses. To the contrary, the nature of the charges makes it *improbable* that the defendants' location at a given time or place would contain evidence of a crime, as wire fraud, money

laundering, and conspiracy to commit same are all crimes that can be committed remotely, without having to physically be present in any particular location.

There is nothing in the supporting affidavits for any of the three "GPS Warrants" indicating that proof of the defendants' whereabouts on any particular occasion or for any period of time would somehow prove or disprove the defendants' alleged involvement in the charged crimes. Instead, there is only a single, unsupported conclusory statement in each of the affidavits that there is probable cause to believe that the information will lead to evidence of the suspected crimes.

The lack of probable cause that the defendants' CSLI would yield evidence of a crime is further highlighted by the fact that when the Warrants were renewed, twice, there were no allegations in the affidavits for the subsequent warrants that the previously obtained CSLI had yielded evidence of a *crime*.

Nor were the warrants supported by probable cause that the defendants' location information would provide proof of (non-existent) co-conspirators. First, the affidavits did not contain any allegations of fact indicating that the defendants had conspired with others. Second, over a year and a half since the last of the GPS Warrants was issued, there has been nothing in any of the Rule 16 discovery provided to date that would indicate that there were any uncharged co-conspirators.

Nor can the "GPS Warrants" be saved by the argument that there was probable cause that the defendants' CSLI would "aid in a particular apprehension," *Warden v. Hayden*, 387 U.S. 294, 307 (1967). The supporting affidavits each contain a conclusory statement that the Warrants will facilitate the arrests of the defendants. However, what the supporting affidavits neglect to mention is that law enforcement used other means to locate the defendants' residences (and, by

31

extension, the defendants). The affidavit in support of a warrant to search Defendant Guy's residence indicated that law enforcement had records of Ms. Guy's ConEdison account, National Grid account, and Spectrum account, all listing Ms. Guy's home address, as well as records of Ms. Guy's lease, rental application, and payment of rent on said apartment.  Ex. O - Aff. in Support of S.W. for Guy's Home, ¶¶ 13 – 14. They further had evidence from the NYPD corroborating Ms. Guy's home address. Id. ¶ 15.

The affidavit for a search warrant of Ms. Stanley's residence indicates that law enforcement obtained her address from Florida State property records, as well as from DMV records, and that law enforcement corroborated Ms. Stanley's whereabouts by physically surveilling her home address on multiple occasions. Ex. A - Aff. in Support of S.W. for Stanley's Home, ¶¶ 13 – 16.

In fact, the Affidavit in Support of the Second GPS Warrant provided the exact home addresses for both defendants, as corroborated by different sources, such as physical surveillance, Florida State property records, and records that had been obtained from Ms. Guy's landlord, thereby nullifying any argument that the Second or Third GPS Warrants were in any way for the purpose of locating the defendants. Ex. H – Aff. in Support of June 7, 2024 GPS Warrants, ¶¶ 23 – 24.

Accordingly, as law enforcement determined both defendants' home addresses (and that defendants actually lived at said residences) from other sources, there was no probable cause that the defendants' CSLI would have further aided their apprehension.

Finally, even if some CSLI had been necessary to aid in their apprehension, the scope of the CSLI sought would have been unconstitutionally overbroad, as the GPS Warrants were for *years*' worth of the defendants' historical location information, in addition to for 45 day periods

of prospective location information. Any argument that years of historical location information is necessary to locate a target for an arrest is simply not credible. Nor is it credible for law enforcement to have asserted that the Second and Third GPS Warrants would aid in the defendants' apprehension, when the affiant specified in the affidavit for the Second GPS Warrant that he *already* had the defendants' precise home addresses, and had corroborated same. Ex. H – Aff. in Support of June 7, 2024 GPS Warrants, ¶¶ 23 – 24.

Wherefore, the defendants move to suppress evidence from all the GPS Warrants, as the warrants violated the defendants' rights under the Fourth Amendment of the U.S. Constitution and under the applicable State Constitutions (New York in Ms. Guy's case, Florida in Ms. Stanley's case).

### III. Motion for *Franks* Hearing.

Defendants Guy and Stanley move for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).

Pursuant to *Franks* and its progeny,

"the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.' *United States v. Canfield,* 212 F.3d 713, 717-18 (2d Cir. 2000) (internal quotation marks omitted); *see also United States v. Awadallah,* 349 F.3d 42, 64 (2d Cir. 2003) (noting that '[i]n order to invoke the *Franks* doctrine, [a defendant] must show that there were *intentional* and *material* misrepresentations or omissions in [the] warrant affidavit.' (emphases supplied))… 'the literal Franks approach [does not] seem[ ] adequate because, by their nature, omissions cannot be deleted'; therefore '[a] better approach . . . would be to . . .insert the omitted truths revealed at the suppression hearing,' *United States v. Ippolito,* 774 F.2d 1482,1487 n.1 (9th Cir. 1985). Accordingly … '[t]he ultimate inquiry is whether, after putting aside erroneous information and [correcting] material omissions, there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause [or necessity].' *Canfield,* 212 F.3d at 718 (internal quotation marks omitted); *see also United States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980) ('[W]e [are] required to determine whether, if

33

the omitted material had been included in the affidavit, the affidavit would still establish probable cause [or necessity] . . . . If it would not, we would be required to void the warrant and suppress the evidence seized pursuant to it.')." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013).

Here:

1. The Affidavit in Support of the Third GPS Warrant omitted that there were already two prior Warrants for Ms. Guy's location information, toll records, and for a trap and trace device and that the location information from the prior warrants: (i) yielded no evidence of a crime and (ii) corroborated the defendants' home addresses.

   a. In fact, not only did the agent's affidavit omit this information, but the A.U.S.A.'s application for the Third Warrant affirmatively erroneously claimed that there had been no prior requests for the relief sought.

   b. These omissions were intentional as both the A.U.S.A. and the F.B.I. Special Agent knew of the prior Warrants and the fruits thereof. The A.U.S.A. had signed the prior warrant applications and the F.B.I. Special Agent had sworn to the prior supporting affidavits.

   c. If the supporting affidavit had stated that two prior warrants had already been issued, then the magistrate would have been able to determine that there was no probable cause for the Third Warrant, given that:

      i. the first two Warrants had not produced evidence of a crime, and

      ii. additional location information would not aid in Ms. Guy's apprehension, it would be redundant. Ms. Guy's home address had *already* been located *prior* to the issuance of the Second GPS Warrant, as set forth in the

34

affidavit in support of the Second GPS Warrant. Ex. H – Aff. in Support ¶ 23.

2. The affidavits in support of the First and Third GPS Warrants omitted that law enforcement had obtained the defendants' home addresses from other sources, including but not limited to Florida State property records and DMV records in Ms. Stanley's case, and, in Ms. Guy's case, the lease for her apartment and records for her utilities.

   a. This information was intentionally omitted by the F.B.I. affiant, as the same agent prepared the affidavits for the GPS Warrants and for the searches of the defendants' residences. Accordingly, the agent's knowledge of the other sources of the defendants' locations is demonstrated by his affidavits in support of the warrants to search the defendants' homes, and in support of the Second GPS Warrant (where he did acknowledge additional sources of information for the defendants' home addresses).

   b. The F.B.I. agent also appears to have omitted that in August of 2023 (the year before any of the GPS Warrants were applied for), AT&T had already provided the investigators with Ms. Stanley's phone records in response to a subpoena, which records included, *inter alia,* Ms. Stanley's home address. Thus, the investigators had Ms. Stanley's home address *before* they applied for any of the GPS Warrants.

   c. Had the affidavits in support of the First and Third GPS Warrants indicated that the F.B.I. had *already* determined the defendants' whereabouts through other means, there could have been no finding that the defendants' CSLI information and toll records would aid in the defendants' apprehension.

35

3. The affidavits in support of the first two GPS Warrants erroneously indicated that arrest warrants were pending for the defendants. This was an intentional misstatement as, in fact, no arrest warrant was issued for either defendant until the same affiant applied for arrest warrants on June 24, 2024, the day that the F.B.I. Special Agent swore to the Criminal Complaint. This post-dated both of the initial two GPS Warrants.

   a. The misstatement that arrest warrants were pending would have formed part of the finding that there was probable cause to believe that the defendants' location information would aid in their arrests. By necessity, if there is no pending arrest, then whether something would aid in an individual's apprehension is a moot point.

4. The affidavit in support of the warrant to search Ms. Stanley's residence and every electronic device found therein stated that she had accessed "fraudulent bank accounts over the internet using different electronic devices." Ex. A - Aff. in Support of S.W. for Stanley's Residence ¶ 23.

   a. However, earlier in the same affidavit, the agent indicates that this was done through *a* single "computer or other electronic device," Id. ¶ 20, and then goes on to indicate that Ms. Stanley's cell phone may have constituted this electronic device. Id. ¶ 21(a), (b).

   b. Accordingly, the allegation that Ms. Stanley had used different electronic devices in furtherance of the crime was made with reckless disregard for the truth, rather than based in factual support.

36

c. Yet this allegation that Ms. Stanley used multiple electronic devices in furtherance of the charged offenses would have been central to the magistrate's finding of probable cause to seize all electronics in the home.

5. The affidavit in support of the two warrants for Ms. Stanley's CSLI, etc. omit that one of the alleged victims discussed therein ("Victim-3") gave Ms. Stanley gifts as part of their relationship (not as a result of fraudulent misrepresentations).

a. The omission was deliberate as the agent's knowledge of this fact is demonstrated from the affidavit in support of the warrant to search Ms. Stanley's residence.

b. The omission goes to whether there was probable cause for these warrants as the agent relied on information from this alleged victim's relatives instead of interviewing the alleged victim himself. However, it is unclear that the relatives would have known whether Ms. Stanley had made any misrepresentations to the alleged victim in their absence. (And it is unclear if the family was even on speaking terms with Victim-3 at the time.) What is clear is that these relatives had $ 9 million worth of motives to lie to the F.B.I., as the individual was contemplating changing his will to leave $ 9 million worth of assets to Ms. Stanley, rather than to his family.

6. The affidavit in support of the warrant to search Ms. Stanley's residence omits the fact that Ms. Stanley did not live there alone, which goes to whether there was probable cause to search all electronic devices in the residence. The agent indicated that physical surveillance had been conducted of the property on multiple occasions, during which agents observed Ms. Stanley was home. From their investigation, including their multiple

37

surveillances of the premises, the agent should have known that Ms. Stanley did not live there alone.

Wherefore, the defendants respectfully move for a *Franks* hearing.

IV. Motion for *Wade* Hearing

Defendant Stanley moves for an evidentiary hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967). "A request for a *Wade* hearing is generally granted 'where any question is raised concerning the suggestibility of the identification procedure.'" *United States v. Chandler*, 164 F. Supp. 3d 368, 383 (E.D.N.Y. 2016) (quoting *United States v. Wilson,* 493 F. Supp. 2d 364, 382 [E.D.N.Y. 2006]; other citations omitted)

"A pre-trial identification is excludable under the Due Process clause 'if it was both produced through an unnecessarily suggestive procedure and unreliable.'" *Chandler*, 164 F. Supp. 3d 368, 382 (quoting *United States v. Bautista,* 23 F.3d 726, 729 [2d Cir. 1994]).

The Second Circuit "has 'consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one.'" *Wiggins v. Greiner*, 132 Fed. Appx. 861, 865 (2d Cir. 2005) (quoting *Mysholowsky v. People,* 535 F.2d 194, 197 [2d Cir. 1976] and citing *United States v. Thai*, 29 F.3d 785, 811 [2d Cir. 1994]).

However, despite the procedure being unnecessarily suggestive, the identification may be considered reliable if the witness "was independently familiar with the person," *United States v. Christopher,* 2020 U.S. Dist. LEXIS 167627, *25; 2020 WL 5518216 (S.D.N.Y. Sept. 13, 2020).

Here, a witness was shown a single photograph of Ms. Stanley on June 26, 2024. Ex. L – Redacted ROI (submitted for filing under seal).

38

We know that this witness was *not* independently familiar with Ms. Stanley because he told the FBI that he had *never* met her.  Id.

Accordingly, not only was the showing of a single photograph to that witness unnecessarily suggestive, but it was also unreliable as there was no independent basis for the witness's identification of Ms. Stanley.

Wherefore, Ms. Stanley moves to preclude that witness's pretrial identification of Ms. Stanley and to preclude any in court identification of Ms. Stanley by that witness, and for a *Wade* hearing.

While we know that the same suggestive practice was used with each of the other pretrial identifications of the defendants, the reports concerning other witness's identifications were too heavily redacted by the Government to be able to determine whether the other witnesses had an independent basis for said identifications.

Accordingly, the defendants reserve the right to bring a supplemental *Wade* motion, if appropriate, closer to trial, after the Government shares their witness list and 3500 material, as the defendants will not know whether there is a ground for a *Wade* hearing as to other witnesses until learning who will be called to testify at trial, whether the trial witnesses made pretrial identifications, and, if so, to what extent, if any, the witnesses were independently familiar with the defendants.

## CONCLUSION

Wherefore, Defendants respectfully move for an Order:

1. Suppressing evidence from the warrant to search Ms. Stanley's residence and person and for the electronic devices in the residence; and

2.  Suppressing evidence from the warrants for, *inter alia,* both defendants' CSLI, as the warrants were issued in violation of the defendants' rights under Federal and State Constitutions; and/or

3.  Granting a hearing pursuant to *Franks v. Delaware*;

4.  Granting a hearing pursuant to *United States v. Wade* and permitting the defendants to bring a supplemental *Wade* motion, if appropriate, closer to trial after disclosure of the Government's witness list and 3500 material*;* and

5.  For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
   January 15, 2026

Respectfully submitted,

*/s/ Joseph R. Corozzo*

Joseph R. Corozzo
Angela D. Lipsman
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Rosanna Stanley*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com

*/s/ William Castro*

William Castro
*Attorney for Defendant Gina Guy*
8724 S.W. 72nd Street, #205
Miami, Florida 33173
Telephone: 305-898-3716
Fax: 305-598-2023
Email: wmcastronyatty@gmail.com

cc:  Assistant United States Attorneys Diarra Guthrie and Lauren Phillips (via email)

40